```
        IN THE UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF ARKANSAS
                FORT SMITH DIVISION
```

LEWARD R. COUNCIL                                          PLAINTIFF

    v.                    Case No. 10-2075

AMERICAN AIRLINES, INC.                                    DEFENDANT

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging a breach of fiduciary duty by Defendant and seeking damages. Before the Court are the Stipulated Administrative Record (Doc. 8), Plaintiff's Brief (Doc. 10), and Defendant's Brief (Doc. 12). For the reasons stated herein, the Court finds that Defendant did not breach its fiduciary duty, and its decision to deny early retirement and the calculated pension benefit for normal retirement was supported by substantial evidence. Plaintiff's claim is therefore **DENIED**, and Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE.**

## I. Background

Plaintiff Leward R. Council born February 21, 1945, worked for Defendant American Airlines, Inc. from January 29, 1968 to November 19, 1980. (AR 20-21)[1]. On July 1, 1970, Plaintiff enrolled in Defendant's employee benefit program, the Retirement Benefit Plan

---

[1] AR refers to the Administrative Record.

of American Airlines, Inc. for Employees Represented by the Transport Workers Union of America, AFL-CIO (the "Plan").

The Plan provided that an employee could request a hardship withdrawal, and upon approval by Defendant, an employee could withdraw from the Plan and the entire amount of the employee's contribution paid into the Plan would be refunded.  (AR 131).  An employee who withdrew would be ineligible to re-enroll in the Plan for five years from the date of the withdrawal, and any subsequent re-enrollment would only be done as a new employee.  *Id.*

On September 25, 1973, Plaintiff requested a hardship withdrawal from the Plan.  (AR 280).  Plaintiff's request form acknowledged he understood the consequences of his withdrawal, including "forfeit[ure] [of] all benefits accrued under both Plans to date of withdrawal."  (AR 280).  On January 17, 1974, Defendant discussed with Plaintiff his request, and the following day executed a recommendation to allow Plaintiff to withdraw and a refund be expedited.  (AR 220).  On February 26, 1974, Defendant issued a refund check for $1,558.38.  (AR 272).

On October 1, 1974, Plaintiff re-enrolled in the Plan during an "open enrollment" period.  On January 1, 1976, the Plan was amended to change the definition of "credited" service and "vested"

service[2]. On April 1, 1978, the Plan was amended to provide for partial vesting, which allowed for Plan participants to receive retirement benefits before they had the required ten years of service, and in proportion to their years of vested service. On November 19, 1980, Plaintiff was terminated from employment with Defendant.

After Plaintiff requested information about his retirement benefits, he received a letter from Defendant dated May 13, 1997, which determined he was eligible for early retirement and estimated his pension was $121.00 per month[3]. (AR 414). On October 24, 2006, Plaintiff filed a claim for benefits. (AR 291). On February 28, 2007, Plaintiff received a decision letter from Defendant which estimated his pension was $179.85 per month and would start at normal retirement. (AR 293). On March 13, 2007, Plaintiff requested Defendant recalculate his estimated pension and to reconsider its decision to deny him early retirement. (AR 304-05). On August 29, 2007, Defendant issued its final decision which denied Plaintiff early retirement and estimated his pension was $104.03 per month based on partial vesting of sixty percent at normal retirement. (AR 80-84).

On October 11, 2007, Plaintiff appealed Defendant's decision

---

2 "Credited" service and "vested" service refer to periods of employment that counted towards a participant's retirement benefits.
3 Early retirement began at age 62, and normal retirement began at 65.

that denied him early retirement and his calculated pension to American Airlines Pension Benefits Administration Committee ("Committee"). (AR 12, 22-23). On December 11, 2007, the Committee affirmed decision to deny Plaintiff early retirement and its calculations concerning Plaintiff's benefits. (AR 1-6). On June 1, 2010, Plaintiff filed this action. (Doc. 1).

II. **Standard of Review**

A denial of benefits claim under ERISA is reviewed for an abuse of discretion when "a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations." *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 1997)(en banc)(citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

The parties do not dispute that abuse of discretion is the proper standard of review. Plaintiff however contends a conflict of interest exists because Defendant both determines whether an enrollee is eligible for benefits and also pays the benefits. Plaintiff contends the conflict of interest should be considered as a factor in determining whether there was an abuse of discretion. *See Hackett v. Standard Ins. Co.*, 559 F.3d 825, 830 (8th Cir. 2009)(citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343 (2008)). The Court will review the denial of benefits for an

abuse of discretion taking into account relevant factors to include the potential conflict of interest.

**III. Analysis**

The Eighth Circuit Court of Appeals has "variously defined . . . an abuse of discretion as being 'extremely unreasonable,' 'virtually' the same as arbitrary and capricious, and 'extraordinary imprudent.'" *Shell v. Amalgated Cotton Garment*, 43 F.3d 364, 366 (8th Cir. 1994)(citations omitted). "The proper inquiry under the deferential standard is whether 'the plan administrator's decision was reasonable; i.e., supported by substantial evidence.'" *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)(quoting *Donaho v. GMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996)). A decision is reasonable "if 'a reasonable person could have reached a similar decision, given this evidence before him, not that a reasonable person would have reached that decision.'" *Id.* (citation omitted). "If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Id.*

The parties appear to be in agreement with many of the facts in this case, including the relevant events and dates. The disagreements between the parties lie in the calculation of time that would count towards retirement benefits. Plaintiff claims he was

entitled to early retirement because he worked for Defendant for over 12 years. Defendant argues Plaintiff was not entitled to early retirement because he had not accrued ten years of service as defined by the Plan. Plaintiff argues that the "Court's determination of vested and credited service in this case will largely decide this dispute." (Doc. 10, Page 2).

The Court agrees with Plaintiff; however, before the specific calculations of "credited" and "vested" service are discussed, the issue of whether Plaintiff's first enrollment period counts as years of service needs to be addressed.[4]

### a. First Enrollment Period

The Plan defines years of service to be "a period of twelve consecutive months during which you perform 1,000 Hours of Service. It is computed during the twelve month period starting on your first day of employment and during any subsequent calendar year." (Doc. 10, Exh. 4 at 28). To qualify for early retirement a participant needed ten years of service; specifically, credited service. (AR 140). Defendant excluded the first enrollment period from years of

---

[4] The "first enrollment" period refers to the time from when Plaintiff first enrolled in the Plan on July 1, 1970 to when he withdrew from the Plan in or around February 1974. The "second enrollment" period refers to the time from when Plaintiff re-enrolled on October 1, 1974, to his termination on November 19, 1980.
  If the first enrollment period does not count as years of service, Plaintiff would be ineligible for early retirement because his years of service are limited to the six years that made up the second enrollment period. If the first enrollment period does count as years of service, the specific calculations of credit and vested service would determine Plaintiff's eligibility for early retirement.

service based on its conclusion that Plaintiff's withdrawal forfeited all accruals, including all years of service. (AR 280, 131). Plaintiff argues that certain provisions in the 1980 collective bargaining agreement ("Agreement") between Defendants and the Transport Workers Union of America, AFL-CIO operates to entitle Plaintiff to "credited service for the period of time prior to 1974 and including 1974." (Doc. 10, Exh. C at 4).

The Court reviewed the cited provisions and the materials submitted but does not find the provisions operate to undo the effects of Plaintiff's withdrawal, including the forfeiture of the accrued years of service.[5] The cited provisions appear only to amend the definition of "credited" service to count from January 1st or July 1st following the date the employee completes his first year of company service and attains the age of twenty-five.[6] In its decision

---

[5] Plaintiff argues that he never received the refund check for his withdrawal however the Record includes a copy of check number 585775 made payable to Plaintiff from Defendant, dated February 15, 1974, and captioned as "benefits payable upon termination of membership in American Airlines, Inc. Retirement Program" in the amount of $1,558.38. (AR 272). Notwithstanding the argument that Plaintiff never received his disbursement check, the issue does not alter the effects of Plaintiff's withdrawal, and/or his re-enrollment as a new member. Furthermore, the Record includes several instances where the effects of a hardship withdrawal were communicated to Plaintiff, including the Plan itself stating that re-enrollment by Plaintiff after withdrawal could only be as a new member. (AR 131). Similarly, the requesting document for his withdrawal is signed by Plaintiff and sets out an understanding that he would be "forfeit[ing] all benefits accrued . . ." and that he "[would] not be permitted at any future date to redeposit in the Plan all or any part of the contributions so withdrawn". (AR 280). Furthermore, records indicate Defendant verbally explained to Plaintiff that a withdrawal would "leave him with no benefits under the Plan at retirement age." (AR 220).

[6] The amendment changes the previous version's starting of credited service to either January 1st or July 1st after the employee completes his first year of

letter, Defendant sets out the history and rationale for excluding the first enrollment period based on its conclusion that Plaintiff's withdrawal caused forfeiture of all accrued benefits. Defendant's decision is further supported by its reasoned conclusion that Plaintiff's re-enrollment on October 1, 1974, was "only as a new member." (AR 1-2).

Accordingly, Defendant's decision to exclude the first enrollment period from total years of service on grounds of forfeiture was supported by substantial evidence, and therefore reasonable. The Court further finds it was likewise reasonable for Defendant to deny Plaintiff early retirement and to calculate benefits at partial vesting for normal retirement based on accrued vested and credited service.

### b. Credited and Vested Service

Prior to the January 1, 1976 Amendment, there was no distinction between credited and vested service, and all years of service counted towards both. (AR 144). Due to the forfeiture, Plaintiff's years of service prior to the Amendment ran from the date of re-enrollment, October 1, 1974, to the date of the Amendment, January 1, 1976. Therefore, Plaintiff's vested and credited service reflects the fractional years of service in 1974 and 1975. Defendant calculated

---

employment and attaining the age of twenty-five, as opposed to the day he meets the requirements. The amendment does not operate to nullify the effects of withdrawing from the Plan.

Plaintiff had .144 and .786 years of credited service in 1974 and 1975, respectively.

Plaintiff's credited service for 1974 was based on the late-in-the-year enrollment (October), and his suspension leave from November 18th through December 31st.  Plaintiff argues that the suspension leave should not be excluded because the case was referred to arbitration which found "the company did not have just cause for the grievant's discharge . . . [h]e should therefore be reinstated". (Doc. 10 at 5)(*citing* Doc. 10, Exh. E).  A review of Plaintiff's cited letter however shows reinstatement was with direction "to treat the period since his discharge as *leave without pay*[.]"  *Id.*  (emphasis added).  As Defendant explained in its decision letter, the Plan does not allow for accumulation of benefits while on unpaid leave and Defendant's decision to exclude it from credited service was reasonable.  (AR 11).  Likewise, Plaintiff's suspension leave from January 1st through April 13th of 1975 was reasonably excluded from credited service.  Therefore the calculated total credited service for 1974 and 1975 of .930 was supported by substantial evidence and was therefore reasonable.

Following the 1976 Amendment, the Plan defined credited and vested service distinct from one another.  Credited service after January 1, 1976, was defined to be any calendar year a participant completes 1900 hours of service, and the fractional amount for the

year the participant does not complete 1900 hours. (AR 144). Plaintiff had 4.000 years of credited service for 1976 and 1978 through 1980, and ".890" for 1977. The fractional years of "credited" service in 1977 was explained by Defendant to be based on Plaintiff's unpaid sick leave from September 21, 1977 to December 12, 1977. Plaintiff contends that this time should not have been excluded because he was off work during that time due to an on the job injury for which he received Worker's Compensation benefits. As Defendant explained in its decision letter, the Plan does not allow for accumulation of benefits while on Worker's Compensation leave and therefore it was reasonably excluded from credited service. Thus the calculated 5.820 years of credited service was supported by substantial evidence and was reasonable.

Vested service was defined to be all years of service during a period of twelve consecutive months during which the employee performs 1,000 hours of service, counted from the first day the employee performs one hour of service to his termination of service. (AR 28). The court notes that the language "all years of service" in the definition of vesting service would appear to include all periods of employment where an employee worked 1,000 hours of service; however this definition, like the 1980 arbitration agreement discussed above, does not operate to nullify the effects of Plaintiff's hardship withdrawal, i.e., it does not operate to

reinstate the forfeited accruals.

Defendant calculated Plaintiff to have "0" years of vested service in 1974, and 1.000 for each of the years from 1975 through 1980, for a total of 6.000 years of vested service. The vested service of 1974 appears to be based on a less-than-1000 hours of service therefore no vested service was accrued. The Court finds Defendant's calculated total number of years of vested service was supported by substantial evidence and was therefore reasonable.

### c. Monthly Pension

Defendant's calculated monthly distribution based on the "Final Average Retirement Benefit" formula was accurately computed. (Doc. 10, Exh.4 at 9). The Formula used calls for "an annual benefit equal to 1.667% of your *Final Average Compensation*, multiplied by years of Credited Service". *Id.* The Final Average Compensation was calculated to be $21,445.60.[7] Pursuant to the Final Average formula, the Final Average Compensation was multiplied by .01667 to receive 1.667% of Final Average Salary. The resulting value was then multiplied by 5.820, Plaintiff's "credited" service, pursuant to the formula. Partial vesting called for a reduction to 60% of the product to reflect the 6.000 years of vested service, which resulted

---

[7] The Plan defines Final Average Compensation to be "[the employee's] Compensation for the 60 consecutive calendar months out of the 120 consecutive calendar months of Credited Service preceding your retirement or termination which produces the highest 60 consecutive-month sum, divided by 5. If you have fewer than 5 years of Credited Service this will be the average of all months during that period." (Doc. 10, Exh. 4 at 27).

in $1,248.39, the annual accrued benefit at 60% vesting.  (Doc. 10, Exh. 4 at 8).  Dividing Plaintiff's annual accrued benefit by twelve resulted in the monthly accrued benefit of $104.03.  The Court finds Defendant's calculations for Plaintiff's monthly pension at partial vesting of 60% at normal retirement was supported by substantial evidence and was therefore reasonable.

The Court notes that it reviewed the matter aware of Plaintiff's argument concerning Defendant's alleged breach of fiduciary duty, and did not find there to be a conflict of interest that caused Defendant to render an "arbitrary" and "capricious" decision. *Groves v. Metropolitan Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir. 2006); *Metropolitan Life Ins. Co v. Glenn*, 554 U.S. 105, 108 (2008). The Court is cognizant that Defendant issued different calculations of Plaintiff's pension before arriving at the final computation; however, these "mistakes" did not appear to reflect any dishonesty or improper motive of Defendant.  *See Congkright v. Frommert*, 130 S.Ct. 1640, 1644 (2010)("People make mistakes.  Even administrators of ERISA plans.  That should come as no surprise, given that the Employee Retirement Income Security Act of 1974 is an enormously complex and detailed statute.").

**IV.  Conclusion**

For the reasons stated herein, the Court finds Defendant's decision to deny Plaintiff early retirement, and the calculated

pension at partial vesting was supported by substantial evidence, and was therefore reasonable.  Defendant's decision is **AFFIRMED,** Plaintiff's claim is **DENIED,** and Plaintiff's Complaint (Doc. 1) is hereby **DISMISSED WITH PREJUDICE** with each party to bear its own costs and fees.

    IT IS SO ORDERED this 20th day of July, 2011.

                                            /s/ Robert T. Dawson
                                            Honorable Robert T. Dawson
                                            United States District Judge